UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ANDREW A. NAPOLITANO JR., Plaintiff,

v.

ZAHRA TAVAKOLI, *et al.*, Defendants.

Case No. 3:26-cv-00206-MMD-CLB

ORDER

## I. SUMMARY

*Pro se* Plaintiff Andrew A. Napolitano Jr. filed identical motions for temporary restraining order ("TRO") and preliminary injunction. (ECF Nos. 2, 3 ("Motions").) Before the Court is United States Magistrate Judge Carla L. Baldwin's Report and Recommendation (ECF No. 26 ("R&R")), recommending that the Court deny the Motions, as well as Plaintiff's motion for order requiring clarification and completion of medical records (ECF No. 21 ("Clarification Motion")). Plaintiff filed an objection. (ECF No. 28 ("Objection").) Defendant Lorenzo Villegas did not respond to the Clarification Motion or Plaintiff's Objection. Having conducted de novo review, the Court agrees with Judge Baldwin and will adopt the R&R. The Court further grants in part and denies in part Plaintiff's recently filed motion for leave to supplement the record.[1] (ECF No. 29.)

## II. RELEVANT BACKGROUND

After screening the Complaint (ECF No. 1-1) under 28 U.S.C. § 1915A(a), the Court permitted Plaintiff to proceed on an Eighth Amendment claim for deliberate

[1]The Court grants Plaintiff's motion for leave to supplement the record (ECF No. 29) to the extent Plaintiff asks the Court to consider Plaintiff's representation about the October 26, 2026 office visit with Dr. King as additional medical evidence. The Court denies the motion otherwise. The Court declines to consider the additional relief about an "appropriate interim treatment plan" and "timely clarification of the medical basis for the proposed weight-loss requirement" that Dr. King recommended (*id.* at 7) because they are unrelated to the Motions and the claim against Villegas in this case.

indifference to medical needs against Defendant Villegas, a nurse practitioner. (ECF No. 6 at 7 ("Screening Order").) In allowing the claim to proceed, the Court found that Plaintiff's allegations stem from alleged delay in treatment of symptoms and pain he experienced as reported in a kite submitted on April 9, 2025 after Plaintiff's hernia surgery in June 2024.[2] (*Id.* at 3-4.) As relevant to Defendant Villegas, Plaintiff alleges he saw her on October 13, 2025.[3] (ECF No. 1-1 at 11.) Villegas told Plaintiff that because his symptoms had persisted for months, his issues could not be serious. (*Id.*) Villegas ordered an x-ray and prescribed a laxative for Plaintiff's bowel blockage and naproxen for pain. (*Id.*) Plaintiff had x-rays on October 23, 2025. (*Id.*) On November 6, 2025, Plaintiff submitted a kite to Villegas stating that the naproxen was not providing pain relief and asked Villegas to submit a request to the Utilization Review Panel for approval to see the original operating surgeon for evaluation. (*Id.*)

On December 1, 2025, Plaintiff saw Villegas again. (*Id.*) Villegas informed Plaintiff that his blood work indicated trauma, but his x-rays were unremarkable. (*Id.*) Villegas had not made any requests for Plaintiff to see his original surgeon. (*Id.*) On December 17, 2025, Napolitano was approved to see Dr. King, and the appointment took place on July 9, 2026.[4] (ECF Nos. 15 at 10; 17 at 62 (sealed); 25 at 3.) During the visit, Plaintiff stated Dr. King performed a physical examination and recommended he receive a CT scan for

---

[2]The Court incorporates the Screening Order's recitation of the allegations (ECF No. 6 at 3-6) and recites only the allegations relevant to the Court's review of Motion, R&R and Objection.

[3]Prior to that date, Plaintiff submitted medical kites to Dr. Voss and Villegas about his pain level and other symptoms on August 20, 2025. (ECF No. 6 at 4.) Plaintiff had also submitted medical kites on August 9, 2025 and on August 18, 2025. (*Id.*) In his Objection, Plaintiff points out an obvious typographical error in the year. (ECF No. 28 at 11.) The R&R had incorrectly referenced the year for these August 9 and 18 kites as 2026 instead of 2025. (ECF No. 26 at 3.) Plaintiff is correct about the clerical error but the error did not affect the Magistrate Judge's findings or this Court's analysis.

[4]In the Objection, Plaintiff asserts that the referral was not transmitted to Dr. King's office until June 10, 2026. (ECF No. 28 at 4.) However, the Magistrate Judge did not make any finding as to the timing of the referral. The timing may be relevant to the merits of Plaintiff's claim as to delay in his treatment, but not the Court's consideration of the Motions.

further treatment.[5] (ECF No. 25 at 3.) In particular, the record of Plaintiff's visit with Dr. King noted Plaintiff's report of abdominal pain and "will go ahead and check a CAT scan with oral and IV contrast to see if there is any problem with the surgery" and that "Patient will return to the office as needed." (ECF No. 28 at 21.)

As discussed, the Court permitted Plaintiff to proceed on an Eighth Amendment claim against Villegas. (ECF No. 6 at 6-7.) Along with the Complaint, Plaintiff filed the Motions, asking the Court issue a temporary restraining order and preliminary injunction directing Villegas to immediately: (1) "evaluate his current medical condition; (2) order referral to an outside general surgeon, preferably the original operating surgeon (Dr. King), for evaluation of post-operative complications; (3) provide effective pain management until specialist evaluation is completed; (4) order appropriate diagnostic imaging; (5) prohibit Defendant from retaliating against Plaintiff for seeking medical care or court intervention; and (6) grant any further relief the Court deems just and proper." (ECF Nos. 2 at 4, 5; 3 at 4, 5.) The Magistrate Judge subsequently recommended denial of the Motions, and denial of the Clarification Motion as moot. (ECF No. 26 at 6-7.)

## III. DISCUSSION

The Magistrate Judge recommended denial of the Motions, finding primarily that Plaintiff cannot show "he will suffer irreparable harm if he does not receive additional treatment immediately." (*Id.* at 6.) The Magistrate Judge found that the records reflect Plaintiff received treatment between April 2025 and continuing to July 2026 by Dr. Tavakoli, Villegas and Dr. King, and that he cannot show that he will suffer irreparable harm if he is not provided "additional treatment immediately." (*Id.*) The Magistrate Judge further found that Plaintiff's request to be referred to the outside surgeon, Dr. King, is

[5]Plaintiff objects to the Magistrate Judge's reference to Dr. King's "office examination" of Plaintiff at the July 9, 2026 appointment, asserting that the examination lasted about five minutes. (ECF No. 28 at 5.) However, Dr. King's treatment, including the length and quality of the office visit, is not relevant to the claim that is proceeding against Villegas or the merits of that claim.

moot since he did see Dr. King on July 9, 2026. (*Id.*) Based on the state of the records, the Court agrees with the Magistrate Judge's recommendations.[6]

Plaintiff's Motions ask for both a TRO and preliminary injunction. (ECF Nos. 2, 3.) Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a TRO and the legal standard for obtaining a preliminary injunction are "substantially identical." *Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. 7. The Supreme Court clarified the standard for these forms of equitable relief in *Winter v. Natural Resources Defense Council,* instructing that the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20. But a plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[he] must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). And the Prison Litigation Reform Act similarly instructs that any restraining order or preliminary injunction granted with respect to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Here, the Magistrate Judge found that Plaintiff cannot show likelihood of irreparable harm because the records reflect he has received treatment, and his request to be referred to the outside surgeon who did his surgery was granted, and Plaintiff thus cannot show irreparable harm if he is not given more immediate treatment. (ECF No. 26

---

[6]The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's Report and Recommendation, the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.*

at 6.) Plaintiff's Objection primarily challenges the Magistrate Judge's finding that he had office visit with Dr. King in July 2026 and the fact that the CT scan was ordered. (ECF No. 28.) But an evaluation with Dr. King was one of Plaintiff's requests in his Motions, which led to the Magistrate Judge finding the requested relief was moot. (ECF Nos. 2 at 3; 3 at 3.) As for the CT scan, the Magistrate Judge found it was ordered and pending, not that it had been conducted.[7] (ECF No. 26 at 7.) Additionally, the other relief that Plaintiff requests--"evaluate his current medical condition"; "provide effective pain management until specialist evaluation is completed" and "prohibit Defendant from retaliating against Plaintiff for seeking medical care or court intervention" are not narrowly tailored to correct any immediate irreparable harm.

In sum, the Court agrees with Judge Baldwin's findings and will adopt the R&R

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the Report and Recommendation of United States Magistrate Judge Carla L. Baldwin (ECF No. 26) is adopted.

It is further ordered that Plaintiff's objection (ECF No. 28) is overruled.

It is further ordered that Plaintiff's motions for temporary restraining order and preliminary injunction (ECF Nos. 2, 3) are denied.

It is further ordered that Plaintiff's motion for clarification (ECF No. 21) is denied.

///

///

---

[7]Plaintiff objects to this finding because he had not received a CT scan as of the filing of his Objection. (ECF No. 28 at 3.) In his motion to supplement, Plaintiff asserts that his "medical condition involves more than a recurrent hernia" and that his condition "should not be disregarded merely because a CT scan has been performed." (ECF No. 29 at 4.) Thus, it appears Plaintiff has had a CT scan. But he appears to disagree with Dr. King's treatment plan based on an October 26, 2026 office visit with Dr. King. (*Id.* at 2-4.)

It is further ordered that Plaintiff's motion for leave to supplement the record (ECF No. 29) is granted in part and denied in part. The motion is granted to the extent Plaintiff seeks to supplement his Objection with evidence of his October 26, 2026 office visit with Dr. King; it is denied with respect to additional relief not identified in the Motions.

DATED THIS 17th Day of November 2026

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE